THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
SANTOS MARTÍNEZ ACEVEDO, Defendant and Appellant.

No. CR-62-238.    Decided April 25, 1963.

*Cristóbal Colón Flores,* counsel designated by Supreme Court to
assist appellant. *Rodolfo Cruz Contreras, Acting Solicitor*

*General,* and *José F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

Santos Martínez Acevedo was convicted of incest in a trial by jury, in the Superior Court, Arecibo Part, and was sentenced to imprisonment in the penitentiary from five to ten years. He appealed in his own right and after all the records were sent to this Court we designated Mr. Cristóbal Colón Flores as his attorney to render him the necessary legal aid in the appeal.[1]

He assigns as errors (1) that "the prosecutrix was submitted to continuous and unjustified questioning even before the prosecuting attorney and the counsel for the defense were through with their examination and (2) in denying counsel for the defense the sworn statement given by a witness for the prosecution."

Both errors were clearly and evidently committed with great prejudice to the accused and, consequently, we must grant a new trial.

The accused was charged with having had sexual intercourse with his daughter, Carmen María Martínez. As generally occurs in these cases, her testimony was the only one that really tended to establish the coitus between father and daughter.

I

■■ From a careful examination of the transcript of oral evidence we are convinced that the judge who presided the trial and who had the serious mission of conducting it

---

[1] Said attorney has satisfactorily performed his task in the fulfillment of that commission.

impartially and justly for both sides and of seeing that only one prosecuting attorney be in charge of the examination and cross-examination on behalf of The People, and that the jury be sole judge to decide the findings of fact, undoubtedly failed in that mission. Our conscience has been once more troubled[2] by the repetition of the undesirable scene of a judge who openly during a trial takes the side of the prosecuting attorney, and with the enormous weight of his authority before the jury, destroys any opportunity of defense for the accused by constant and unjustified questioning and pronouncements as to the merits of the case, and which daunts counsel for the defense with improper and prejudicial remarks before the jury.

Let us refer to a few of the many occasions in which said judge interfered, by using the brief of defendant's attorney which correctly presents them in the following way:

"The second witness presented by the prosecuting attorney was the prosecutrix Carmen María Martínez Romero. While the prosecuting attorney was questioning her, the judge interrupted several times with questions tending to aid the prosecuting attorney in his examination of the witness and not for the purpose of clarification.

"On examination by the Judge, she testified:

Q. Did you hear the question?—Yes, sir.

Q. He asks you to explain to the jury and to us what happened when the man that went to your bed and that you point out as your father, what happened there?—The man abused me.

Q. He abused you?—Yes, sir.

Q. What did he do to you when he came to your bed, immediately, what did he say, if he said anything?—He did not say anything.

Q. Did he embrace you?—Yes, sir.

Q. Did he kiss you?—No, sir.

Q. Did he ask you to kiss him?—No, sir.

---

[2] See the opinion in *People* v. *Aletriz*, 85 P.R.R. 621 (Pérez Pimentel) (1962).

Q. —What did he do?— . . . (no answer). (T.E. p. 12.)

"While the prosecuting attorney was asking the prosecutrix what had happened in the bed, the judge reassumes his role of prosecuting attorney with the following questions:

"On examination by the Judge, she testified:

Q. What did he do?—He lay on top of me.

Q. Did you open your legs?—No, sir.

Q. What happened? . . . (no answer)—(T.E. p. 13).

"The prosecuting attorney questions and the judge again takes his turn submitting the witness, without any justifiable reason, to the following interrogatory:

"On questioning by the Judge, she testified:

Q. That was on what day?—December 24.

Q. Of last year?—1960.

Q. At what time was that?—About 11:00 p.m.

Q. Did he come back that same night?—No, sir.

Q. Did he come back later?—No, sir.

Q. You had done that before?—No, sir.

Q. And after that day?—Later, when the baby was four months old.

Q. Then, from that union in December, came a girl?—Yes, sir.

Q. And after the girl had come, how many days after the girl had come?—Four months.

Q. After four months he continued doing that with you?—Yes, sir.

Q. Did he come to your bed or did you have a bed for both of you?—He came to my bed.

Q. And did you do that peacefully? . . . (no answer).

Q. Did you like it?—No, sir.

Q. Why did you consent if you did not like it?—Because I did not have anybody to tell it.

Q. And your brothers and sisters? Why did you not ask help from your brothers and sisters?—Because I was afraid.

Q. Why?—Because I was ashamed, sir.

Q. When you went to deliver the baby, were you ashamed?—Yes, sir.

Q. Why did you do that again if you were ashamed? . . . (no answer). (T.E. pp. 13–14.)

"Counsel for the defense questioned the prosecutrix trying to discredit her testimony before the jury. He based his theory on that the witness had had sexual intercourse with other men. When he asked the witness if she had been pregnant by José Antonio Martínez, the prosecuting attorney objects and the judge 'argues':

"Judge: There is no reason for those questions because supposing that the girl had had sexual relations with another man, even if it were with more than one, or more than two, or more than three persons, it has nothing to do with the present information, which is against her father, who had sexual relations with her. The prosecuting attorney accuses him of that. It is no defense, to our understanding, that this girl had sexual relations with another man or that she liked other men. What we have to inquire is whether there were sexual relations between father and daughter."

Among other things we said in the aforesaid case of *Aletriz*: "What the record does reveal is that the judge skillfully displayed in this case the mission reserved by law to the prosecuting attorney." In that case we granted a new trial although the error had not been assigned, nor the acts which gave rise thereto were duly objected in the trial court. On that ground we likewise held in *People* v. *Bartolomei*, 70 P.R.R. 664, 671 (1949); *People* v. *León*, 53 P.R.R. 408, 419 (1938); *People* v. *Acevedo*, 35 P.R.R. 886, 890 (1926).

## II

After cross-examination of the principal witness Carmen María Martínez was through, counsel for the defense requested the judge to order the district attorney to produce the testimony rendered by that witness during the preliminary investigation. The district attorney objected because "It is too late to file that petition."—T.E. p. 27—and because "It is a matter of following the legal procedure." T.E. p. 28. The judge refused to so order in the following terms:

"The producing of a sworn statement is for the purpose of impeachment, and the foundation for impeachment has to be

previously laid. Therefore, if you have the sworn statement now, as the foundation for impeachment has not been previously laid, you can not impeach it." T.E. p. 28.

After this ruling the examination of the witness was continued, but this time and to its completion, by the judge. T.E. pp. 28–30.

As to the testimony of Luis Romero Medina, the defense previously made the same petition, but the district attorney, without waiting to be ordered, produced it. T.E. p. 47.

■ In *People* v. *Ribas*, 83 P.R.R. 371 (Dávila) (1961), we decided that for a defendant to obtain a copy of a sworn statement made by a witness of the prosecution, the foundations for the impeachment did not have to be previously laid. In *People* v. *Díaz*, 86 P.R.R. 529 (Dávila) (1962), we held that the defendant is entitled to obtain a copy of any statement given by a prosecution witness waived by the district attorney and called by the defense. *Cf. People* v. *Ramos*, 84 P.R.R. 542 (1962). The doctrine of those cases does not object to the accused having the opportunity of requesting and obtaining the previous statement of any witness who might have testified at the trial, at any time during the hearing, and before finally submitting the case to the jury for decision.

The judgment should be reversed and a new trial ordered.